UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSAURA DERAS,<br><br>    Plaintiff,<br><br>    v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC.,<br><br>    Defendant. | Case No. 17-cv-05452-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: ECF No. 34 |

Before the Court is Defendant's motion to dismiss Plaintiff's first amended complaint. ECF No. 34. The Court will grant the motion in part and deny it in part.

## I. BACKGROUND

In this putative class action, Plaintiff Rosaura Deras alleges various claims against Defendant Volkswagen Group of America, Inc. ("VW" or "VWGoA") based on her contention that VW fails to warn consumers about the dangers of defective sunroofs that might "spontaneously shatter." ECF No. 22 ¶ 4. Deras seeks to represent a class of individuals who purchased or leased any of the following automobiles, equipped with factory-installed sunroofs, in California: 2005-2017 Jetta, 2015-2017 Golf, 2006-2015 GTI, 2009-2010 CC, 2007-2016 Eos, 2006-2009 Rabbit, 2012-2017 Passat, 2004-2006 Touareg, 2011-2017 Touareg, 2008 R32 Base, and 2009-2017 Tiguan ("Class Vehicles"). Id. ¶¶ 20, 59. She anticipates amending this list "upon VW identifying in discovery all of its vehicles manufactured and sold with the same or similar sunroofs." Id. ¶ 20. The first amended complaint ("FAC") alleges that, "The sunroofs in the Class Vehicles all share a common design, and that common design is defective, resulting in the sunroofs of the Class Vehicles spontaneously shattering." Id. ¶ 25.

It further alleges the following:

Deras leased a 2013 Volkswagen Jetta in June 2013 and purchased the vehicle on June 3, 2016, at the end of her lease term. Id. ¶¶ 51, 53. She either would not have leased or purchased the vehicle, or would have paid less for it, if she had known about the sunroof defect. Id. ¶ 56. In 2017, while driving on the freeway,

> a loud "BOOM" like gunshot/explosion went off in the car, followed by a hail of glass falling on her head and the interior of the vehicle. Ms. Deras noticed that there was a large hole in the center of her windshield,[1] and the edges were pointing outward/upward indicating that the break came from the inside.

Id. ¶ 54.

Since December 14, 2009, at least fifty-six "owners and lessees of Class Vehicles have reported an incident of their sunroof shattering" to the National Highway Traffic Safety Administration ("NHTSA"). Id. ¶ 26.[2] At least nine of these complaints were filed before June 2013, when Deras leased her vehicle. Id. ¶ 9. VW knew of the defect through the NHTSA complaints, as well as through its internal tracking systems. Id. ¶ 28. In addition, VW issued a recall for its 2013-2015 Beetle "relating to the shattering of sunroofs," but "it has done nothing regarding the far more predominant problem relating to all regular and panoramic sunroof shattering that affects potentially hundreds of thousands or more VW vehicles." Id. ¶ 33. Two other vehicle manufacturers, Hyundai and Audi, have also "voluntarily initiated safety recalls as a result" of having "vehicles with sunroof problems." Id. ¶ 46; see also id. ¶ 39 (alleging that Hyundai "initiated a recall relating to shattering sunroofs").

VW "continues to conceal [the sunroof defect's] existence from current drivers and potential customers alike." Id. ¶ 42. It "has neither warned consumers at the point of sale/lease nor when drivers who have experienced a shattered sunroof bring their vehicle in for repairs (or instructed its dealerships to do so) thus making no effort to alert consumers of the risk." Id. The

---

[1] The use of the word "windshield" in the FAC appears to be an error, based both on the nature of Plaintiff's claims and her subsequently-filed Case Management Statement. See ECF No. 45 at 4 ("This incident resulted in a large hole of the center of the Sunroof, with the edges pointing outward.").

[2] The FAC alleges "[a]t least fifty seven (57) owners and lessees of Class Vehicles have reported an incident of their sunroof shattering to the NHTSA," but the table lists only fifty-six complaints. Id. ¶ 26.

company "knows that the defect is not reasonably discoverable by drivers unless they experience a failure and are exposed to the attendant safety risks." Id. ¶ 43. In addition, "the replacement part used in repairs is substantially identical to the original factory-installed sunroof, such that it may also spontaneously explode." Id. ¶ 108.

VW advertises a "basic limited warranty of 3 years/36,000 miles." Id. ¶ 47. Deras and members of the class "experienced damage from the Sunroof Defect within the warranty periods of their vehicles" and "reasonably expected that any and all damage that resulted from a defect such as the Sunroof Defect would be covered under the warranty, and that they would not be charged for such repairs." Id. ¶ 49. But "VW has systematically denied coverage with respect to the defective sunroofs." Id. ¶ 50. As a result, Deras and "numerous Class Members have been forced to incur substantial repair bills and other related damages, including being forced to make claims under their automotive insurance policies and incurring substantial deductibles." Id.

Deras seeks to recover on six claims for relief: (1) violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 et seq.; (2) unjust enrichment; (3) violation of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.; (4) violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq.; (5) violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790 et seq.; and (6) fraud by omission. VW moves to dismiss all claims.

## II. LEGAL STANDARD

A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id.

3

(internal quotation marks and citation omitted). In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005).

Fraud claims are governed by the heightened pleading standards of Federal Rule of Civil Procedure 9(b). Allegations of fraud must "be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong. Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks, alteration, and citations omitted). However, "a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim," and such a claim "will not be dismissed purely for failure to precisely state the time and place of the fraudulent conduct." Falk v. Gen. Motors Corp., 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007).

## III. DISCUSSION

### A. Implied Warranty Claims

VW moves to dismiss Deras's two implied warranty claims, under the MMWA and the Song-Beverly Act, on grounds that they are barred by the statute of limitations. Deras does not dispute that both claims carry a four-year statute of limitations. See Gerstle v. Am. Honda Motor Co., Case. No. 16-cv-04384-JST, 2017 WL 2797810, at *11, 13 (N.D. Cal. June 28, 2017). Nor does she dispute that she did not file her complaint within four years of the date on which she leased her vehicle. See ECF No. 22 ¶ 51 (alleging that Deras leased her vehicle "around June of 2013); ECF No. 1 (complaint filed on September 20, 2017). Instead, she argues that her claim is timely because her June 2016 purchase re-started the statute of limitations clock and, in the alternative, that the statute of limitations is tolled based on allegations of fraudulent concealment and because VW's express warranty tolled the limitations period until Deras knew of the defect.

Deras's first argument is persuasive, and the Court therefore does not reach the tolling arguments. As VW acknowledges, California Civil Code section 1795.5 creates an implied

4

warranty on the part of a "distributor or retail seller of used consumer goods."[3] VW argues that this provision does not apply to Deras's 2016 purchase because the FAC "does not plead that the vehicle was purchased from VWGoA." ECF No. 42 at 7. However, the FAC alleges that, "[a]t all times relevant to this action, VW marketed, distributed, *sold*, leased, and warranted the vehicles at issue in the State of California and throughout the United States." ECF No. 22 ¶ 14 (emphasis added). It further alleges that Deras leased her vehicle from Serramonte Volkswagen, and that she purchased her vehicle at the end of her lease. Id. ¶ 51, 53. Construing these allegations in the light most favorable to Deras, it is reasonable to infer that Deras purchased the vehicle from the same dealership from which she leased it. This case is therefore distinguishable from the single case relied on by VW, where a district court found that a vehicle manufacturer had no obligation under section 1795.5 when the plaintiff purchased a used vehicle from CarMax, a third-party reseller. Johnson v. Nissan N. Am., Inc., 272 F. Supp. 3d 1168, 1179 (N.D. Cal. 2017). Here, Deras may bring an implied warranty claim based on her purchase of the vehicle not because VW was the manufacturer, but because it sold her the vehicle.[4]

There is no dispute that Deras brought her claims within four years of purchasing the vehicle. VW's motion to dismiss the implied warranty claims as time-barred is therefore denied.

### B. Unjust Enrichment Claim

VW next argues that Deras's claim for unjust enrichment is precluded by VW's new vehicle warranty. This Court agrees. In a recent case alleging defective design of a Bluetooth system in certain Acura vehicles, this Court dismissed the plaintiffs' unjust enrichment claim because "a quasi-contract action for unjust enrichment does not lie where express binding agreements exist and define the parties' rights." Gerstle, 2017 WL 2797810, at *14 (internal quotation marks, alteration, and citation omitted). The Court rejected the plaintiffs' attempt to

---

[3] This code section is part of the Song-Beverly Act, and the MMWA defines "implied warranty" as "an implied warranty arising under State law . . . in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301.

[4] VW does not contest that is liable for sales made at Volkswagen dealerships.

5

plead unjust enrichment as an alternative to claims brought under an express warranty, and it dismissed the unjust enrichment claim with prejudice. Id. Deras does not cite, let alone attempt to distinguish, Gerstle's holding on this issue. Like the plaintiffs in Gerstle, Deras contends that the alleged defect was covered by the express new vehicle warranty.[5] "Even though Rule 8(e)(2) of the Federal Rules of Civil Procedure allows a party to state multiple, even inconsistent claims, it does not alter a substantive right between the parties and accordingly does not allow a plaintiff invoking state law to an unjust enrichment claim while also alleging an express contract." Gerlinger v. Amazon.com, Inc., 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004). Where, as here, Deras alleges that "a valid express contract covering the same subject matter exists between the parties, . . . an action in quasi-contract is inappropriate." Id. The unjust enrichment claim is dismissed with prejudice.

### C. UCL, CLRA, and Fraud by Omission Claims

VW moves to dismiss Deras's UCL, CLRA, and fraud by omission claims based on failure to allege knowledge. It also argues that the UCL and CLRA claims are improper claims for equitable relief because Deras has an adequate legal remedy.

#### 1. Knowledge

The parties do not dispute that the UCL, CLRA, and fraud by omission claims require Deras to allege that VW had knowledge of the alleged defect at the time of sale or lease. See, e.g., Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1145-46 (9th Cir. 2012) ("Plaintiffs must allege HP's knowledge of a defect to succeed on their claims of deceptive practices and fraud [including CLRA and UCL claims]."). Deras asserts that she has alleged knowledge based on consumer complaints to the NHTSA, internal monitoring, and prior sunroof recalls by other vehicle manufacturers and by VW for vehicles not at issue in this case. VW contends that these allegations are insufficient to state a claim. The Court agrees.

##### a. NHTSA Complaints

---

[5] Glenn v. Hyundai Motor America, a case relied on by Deras, is therefore unhelpful. In that case, the plaintiffs "argue[d] that the unjust enrichment claim [fell] outside the scope of the warranty." No. SACV152052DOCKESX, 2016 WL 7507766, at *6 (C.D. Cal. Nov. 21, 2016).

6

First, Deras alleges that the NHTSA received fifty-six complaints of shattering sunroofs in Class Vehicles between December 14, 2009, and April 11, 2017 – a period of seven years and four months – and that VW monitored NHTSA complaints. ECF No. 22 ¶¶ 26-28. Of the identified complaints, forty-five were made before Deras purchased her vehicle on June 3, 2016. See id. ¶ 26. VW argues that the Court should only consider complaints made on 2013 Volkswagen Jettas, the same vehicle purchased by Deras, but the Court considers all of the complaints based on Deras's allegation that all Class Vehicles had sunroofs of similar design. Id. ¶ 25. Nonetheless, "the Ninth Circuit has held that consumer complaints suffice to establish knowledge only where there were an *unusual* number of complaints, such that the manufacturer would be on notice of a specific problem." Sloan v. Gen. Motors LLC, No. 16-CV-07244-EMC, 2017 WL 3283998, at *7 (N.D. Cal. Aug. 1, 2017) (citing Williams v. Yamaha Motor Co., 851 F.3d 1015, 1026 (9th Cir. 2017); Wilson, 668 F.3d at 1148). Here, Deras contends that there are "potentially hundreds of thousands or more" Class Vehicles. ECF No. 22 ¶ 33. Forty-five, or even fifty-six, complaints out of hundreds of thousands of vehicles does not on its face indicate an unusually high number of complaints, and Deras does not so allege. These complaints therefore do not show VW's knowledge of the alleged defect. See Sloan, 2017 WL 3283998, at *7 ("Plaintiffs do not allege that the 81 complaints posted over the course of seven years was an unusually high number of complaints. Thus, the complaints do not show GM's knowledge of the alleged defect.").

### b. Internal Monitoring

The Court next considers Deras's allegation that VW had an internal monitoring system:

> VW internally tracks information regarding all sunroof failures through the collection of incident reports and other information from drivers and dealers (through VW's TREAD ACT EWR Reporting obligations), including complaints, warranty claim, replacement parts data, dealings with insurance companies, and other aggregated data sources. VW has exclusive access to this information, including pre-release testing of vehicle components, thus establishing that VW had knowledge very early on about the defect.

ECF No. 22 ¶ 28. This is insufficient to allege knowledge of a defect. As another district court explained in a case involving an alleged paint defect in Hyundai vehicles:

> [W]hile Plaintiffs now allege that Hyundai had significant quality-monitoring processes in place, including its OSQC, a reorganized quality control department, a "Global Quality Situation Room," and "ongoing communication" with customers, they have not sufficiently alleged how any of these quality control mechanisms placed Defendants on notice that there was a possible paint defect in their vehicles. (See CCAC ¶¶ 66–71.) The fact that Defendants had quality control programs in place on the one hand, and that several consumers made anonymous complaints online with a few indicating that they spoke to a Hyundai dealership or to its customer service department on the other hand, fails to establish knowledge of a widespread defect. Plaintiffs include no allegations indicating that random complaints received across the country would alert Hyundai's international quality control department to an alleged paint defect.

Resnick v. Hyundai Motor Am., Inc., No. CV1600593BROPJWX, 2017 WL 1531192, at *14 (C.D. Cal. Apr. 13, 2017). This Court has previously noted that courts "are divided" as to whether it is sufficient to allege that a defendant "had exclusive access to additional sources of information that reveal the [alleged] defect, including pre-production testing, pre-release testing data, early consumer complaints made exclusively to [the defendant], high levels of repair orders and warranty reimbursements, testing conducted in response to complaints, replacement part sales data, and aggregate date from [defendant's] dealers." MacDonald v. Ford Motor Co., 37 F. Supp. 3d 1087, 1095 (N.D. Cal. 2014). The Court explained that the dispositive issue "was whether the plaintiffs provided additional information supporting their allegations," and found the allegations sufficient because "Plaintiffs have alleged plausible facts supporting their belief": the issuance of internal training service bulletins and statements made by an engineering manager noting a problem with water pumps. Id. at 1095-96. Here, Plaintiffs have alleged no similar facts to support a conclusion that VW's internal monitoring mechanisms caused VW to know "of a widespread defect." Resnick, 2017 WL 1531192, at *14. In addition, Deras "do[es] not provide any allegations regarding the method by which complaints were recorded and transmitted to management, or otherwise reviewed or received," or any "allegations that these quality control mechanisms were put in place in response to" the alleged defect. Id. at *17. Deras's allegations of VW's internal monitoring system are therefore insufficient to plead knowledge of the alleged defect.

### c. Prior Recalls

Finally, Deras alleges that "VW is . . . aware that other manufacturers – whose vehicles have similarly designed panoramic sunroofs and similar shattering problems – have voluntarily initiated safety recalls to notify drivers of the danger and repair shattered sunroofs free of cost," and that "VW itself has recalled similarly designed sunroofs with the exact same shattering problem via a voluntary safety recall to notify drivers of the danger and repair shattered sunroofs free of cost." ECF No. 22 ¶¶ 29-30; see also id. ¶ 9 ("on December 7, 2014 VW issued a voluntary recall of 2013-2015 [model year] VW Beetles with panoramic sunroofs"); id. ¶¶ 39-40 (alleging Hyundai and Audi recalls). VW correctly observes that all of these recalls related to panoramic sunroofs, which are only a subset of the sunroofs at issue in this case. See ECF No. 22 ¶ 1 ("Sunroofs are sliding, pop-up, spoiler, inbuilt, top-mounted, or panoramic glass panels within the roof of an automobile (*i.e.*, sheet(s) of glass)."). However, Deras alleges that "[s]unroofs are made of glass that attaches to tracks, which in turn are set within a frame attached to the vehicle"; "[m]ost sunroofs, including those offered by VW, include a retractable sunshade"; and that "[t]he sunroofs in the Class Vehicles all share a common design, and that common design is defective, resulting in the sunroofs of the Class Vehicles spontaneously shattering." ECF No. 22 ¶¶ 23-25. Thus, Deras alleges that all of the sunroofs at issue in this case share a similar design, and that VW, Hyundai, and Audi have instituted prior recalls based on similarly designed sunroofs.[6] If true – as the Court must presume at this stage of the proceedings – this would be some evidence that VW knew of a design defect in the sunroofs of the Class Vehicles.

The cases on which VW relies are distinguishable. In Ray v. Samsung Electronics America Inc., the court held that "recall of machines manufactured by a different entity does not demonstrate that the defendants knew of defects in Samsung's own products." No. 15CV8540

---

[6] The Court grants VW's unopposed request to take judicial notice of a report by the NHTSA concerning VW's recall of 2013-15 Beetles with a factory-installed panoramic sunroof. ECF No. 36. That report identified the cause of the "incidents of fractured sunroof glass . . . as the metal sunroof frame being manufactured outside of the allowed tolerance range." ECF No. 36-1 at 3. VW characterizes this as a one-time manufacturing defect, but construing the allegations in a light most favorable to Deras, it is reasonable to infer that sunroofs with similar designs might experience the same defect.

(DLC), 2016 WL 3406127, at *8 (S.D.N.Y. June 17, 2016). But nothing in that case indicates that the machines of the other manufacturer had a similar design to Samsung's products. In Resnick, the plaintiffs alleged only that another manufacturer used the same painting technique at issue but did not allege that the defendant knew the other manufacturer was using the same technique or why it stopped using it. 2017 WL 1531192, at *16. Here, by contrast, Deras alleges that VW knew that other manufacturers – and VW itself – had problems with defective sunroofs of similar design and issued recalls acknowledging those problems. This case is likewise distinguishable from Wilson, where the court found it insufficient for the plaintiff to allege that "another lawsuit involving the same defect on a different model of laptop computers" put the defendant on notice of a defect in the plaintiff's model of laptop computers. 668 F.3d at 1146. Nothing in the court's opinion indicates that the plaintiff alleged any similarity of design between the different laptop models. In addition, a lawsuit indicates only that someone alleges a defect, not that a defect actually exists, whereas a recall indicates that the manufacturer itself acknowledges a defect. Finally, VW quotes the district court in Osness v. Lasko Products, Inc.: "[T]he fact that Lasko knew of the defect at the time of the 2006 recall is not sufficient to establish that Lasko knew of the defect when it sold the fans that were subject to the 2011 recall." 868 F. Supp. 2d 402, 410 (E.D. Pa. 2012). But the very next sentence in Osness explains that the issue was one of timing: "The fans subject to the second recall were sold to consumers between July 2002 and December 2005 – *before the first recall in February 2006*." Id. (emphasis added). Thus, Osness does not stand for the proposition that a prior recall can never establish knowledge; it stands only for the common-sense proposition that issuance of a recall does not, without more, establish knowledge of a defect for products sold before the recall was issued.

However, Deras has cited no authority, and this Court is aware of none, holding that prior recalls of similarly designed products is, standing alone, sufficient to establish knowledge of a defect. Because Deras's other allegations regarding knowledge are deficient, the Court dismisses the UCL, CLRA, and fraud by omission claims with leave to amend.

### 2. Equitable Relief Claims

VW also moves to dismiss Deras's UCL and CLRA claims on grounds that they seek only

equitable relief, which VW contends is impermissible because Deras has an adequate remedy at law. See, e.g., Philips v. Ford Motor Co., No. 14-CV-02989-LHK, 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015) ("A plaintiff seeking equitable relief in California must establish that there is no adequate remedy at law available."). However, this Court "find[s] no bar to the pursuit of alternative remedies at the pleadings stage." Aberin v. Am. Honda Motor Co., Inc., No. 16-CV-04384-JST, 2018 WL 1473085, at *9 (N.D. Cal. Mar. 26, 2018). In addition, contrary to VW's assertion that Deras does not allege any risk of future harm because she does not allege that her replacement sunroof was defective, the FAC alleges "that the repairs do not address the root cause(s) of the defect," and that VW does not "disclose that the replacement part used in repairs is substantially identical to the original factory-installed sunroof, such that it may also spontaneously explode." ECF No. 22 ¶¶ 98, 108. This is sufficient to allege a risk of future harm.[7] Deras's UCL and CLRA claims may stand, provided that she adequately alleges knowledge when she amends her complaint.

## CONCLUSION

VW's motion to dismiss is granted in part and denied in part. The motion is denied as to the implied warranty claims and granted in all other respects. The unjust enrichment claim is dismissed with prejudice, but leave to amend is granted as to the UCL, CLRA, and fraud by omission claims. Any amended complaint must be filed within thirty days of the date of this

///

///

---

[7] This case is therefore distinguishable from Bird v. First Alert, Inc., a case relied on by VW where the court found the risk of future harm to be too speculative to support an injunctive relief claim. No. C 14-3585 PJH, 2014 WL 7248734, at *5 (N.D. Cal. Dec. 19, 2014). Two other cases relied on by VW are distinguishable because the plaintiffs in those cases did not argue that the available legal remedies were inadequate. See Zapata Fonseca v. Goya Foods Inc., No. 16-CV-02559-LHK, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016) (plaintiff did not contend that causes of action providing for money damages "provide him an inadequate remedy"); Moss v. Infinity Ins. Co., 197 F. Supp. 3d 1191, 1203 (N.D. Cal. 2016) ("Plaintiff does not dispute that she has an adequate remedy at law by way of her breach of contract claims against Infinity."). The final case relied on by VW summarily decided, without explanation, that "plaintiffs have an adequate remedy at law for the alleged Song–Beverly Act violation." Durkee v. Ford Motor Co., No. C 14-0617 PJH, 2014 WL 4352184, at *3 (N.D. Cal. Sept. 2, 2014). This Court reaches a contrary conclusion.

order. Failure to file a timely amended complaint will result in dismissal of the dismissed claims with prejudice.

**IT IS SO ORDERED.**

Dated: May 17, 2018

_____
JON S. TIGAR
United States District Judge