**HERZFELD & RUBIN, P.C.**
Michael B. Gallub
E-mail: *mgallub@herzfeld-rubin.com*
Jeffrey L. Chase
E-mail: *jchase@herzfeld-rubin.com*
125 Broad Street
New York, N.Y. 10004
Telephone (212) 471-8500; Facsimile (212) 344-3333
(Admitted *Pro Hac Vice*)

**HERZFELD & RUBIN LLP**
Craig L. Winterman (Bar No. 75220)
E-mail: *cwinterman@hrllp-law.com*
10866 Wilshire Blvd, Suite 800
Los Angeles CA 90024
Telephone: (310) 553-0451; Facsimile: (310) 553-0648

Attorneys for Defendant,
VOLKSWAGEN GROUP OF AMERICA, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSAURA DERAS, ALEXANDER SANTIAGO and MARIA ELENA SANTIAGO individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC.<br><br>Defendant. | Case No. 3:17-cv-05452-JST<br><br>**VOLKSWAGEN GROUP OF AMERICA, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ITS PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date: November 1, 2018<br>Time: 2:00 p.m.<br>Courtroom: 9<br>Judge: Hon. Jon S. Tigar |

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................................. 1

II.    ARGUMENT ........................................................................................................................ 1

     A.    Plaintiffs' CLRA, UCL and Fraud Claims Fail Because Plaintiffs Have Not Adequately Pled That VWGoA Had Pre-Sale Knowledge Of The Alleged Defect .................................................................................................... 1

          1.    NHTSA Complaints ....................................................................................... 1

          2.    Internal Monitoring ........................................................................................ 3

          3.    Prior Recalls .................................................................................................. 6

III.   CONCLUSION .................................................................................................................... 9

# TABLE OF AUTHORITIES

**Federal Cases**

*Becerra v. General Motors LLC*,
   241 F. Supp. 3d 1094 (S.D. Cal. Mar. 10, 2017), 6

*Berenblat v. Apple, Inc.*,
   2010 WL 1460297 (N.D. Cal. Apr. 7, 2010) ................................................................................ 2

*Elfaridi v. Mercedes-Benz, USA, LLC*,
   2018 WL 4071155 (E.D. Mo. Aug. 27, 2018) .............................................................................. 7

*Gold v. Lumber Liquidators, Inc.*,
   2015 WL 7888906 (N.D. Cal. Nov. 30, 2015) .............................................................................. 2

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*,
   525 F. App'x 94 (3d Cir. 2013) ..................................................................................................... 2

*Grodzitsky v. Am. Honda Motor Co.*,
    2013 WL 690822 (C.D. Cal. Feb. 19, 2013) ............................................................................ 2, 5

*In re MyFord Touch Consumer Litig.*,
   46 F. Supp. 3d 936 (N.D. Cal. 2014) ............................................................................................ 3

*Long v. Graco Children's Prods. Inc.*,
   2013 WL 4655763 (N.D. Cal. Aug. 26, 2013) .............................................................................. 3

*MacDonald v. Ford Motor Co.*,
   37 F. Supp. 3d 1087 (N.D. Cal. 2014) ...................................................................................... 3, 4

*Marsikian v. Mercedes Benz USA, LLC*,
   2009 WL 8379784 (N.D. Cal. May 4, 2009) ................................................................................ 5

*Precht v. Kia Motors Am., Inc.*,
   2014 WL 10988343 (C.D. Cal. Dec. 29, 2014) ........................................................................ 7, 8

*Resnick v. Hyundai Motor America, Inc.*,
   2017 WL 1531192 (C.D. Cal. Apr. 13, 2017) ........................................................................... 4, 5

*Sloan v. GM LLC*,
   2017 WL 3283998 (N.D. Cal. Aug. 1, 2017) ................................................................................ 2

*Stewart v. Electrolux Home Prods.*,
    2018 WL 1784273 (E.D. Cal. Apr. 13, 2018) .............................................................................. 4

*Williams v. Yamaha Motor Co.*,
   851 F.3d 1015 (9th Cir. 2017) .................................................................................................. 2, 3

*Wilson v. Hewlett Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) ................................................................................................ 1

**Statutes**

Fed. R. Civ. P. 12(b)(6) ..................................................................................................................... 9

Fed. R. Civ. P. 9(b) ........................................................................................................................... 9

## I. INTRODUCTION

Plaintiffs' opposition attempts to evade Defendant's arguments demonstrating the Second Amended Complaint's ("SAC's") failure to cure the deficiencies for which this Court dismissed the UCL, CLRA and fraud by omission claims. Dkt. No 47, Order dated May 17, 2018 ("Dismissal Order"). The Dismissal Order clearly articulated the deficiencies fatal to all three claims; namely, Plaintiffs' failure to plead **facts,** as opposed to unsupported conclusions, establishing that VWGoA had knowledge of the specific sunroof defect alleged to exist in Plaintiffs' vehicles prior to the times in which Plaintiffs purchased them. Despite the Court's rulings, the SAC still fails to plead such facts. It merely bolsters the insufficient conclusory allegations of the FAC with more of the same insufficient conclusory allegations. For the reasons discussed below and in VWGoA's Motion to Dismiss, Plaintiffs' UCL, CLRA and fraud by omissions claims should be dismissed, this time with prejudice.

## II. ARGUMENT

### A. Plaintiffs' CLRA, UCL and Fraud Claims Fail Because Plaintiffs Have Not Adequately Pled That VWGoA Had Pre-Sale Knowledge Of The Alleged Defect

#### 1. NHTSA Complaints

As Plaintiffs acknowledge, this Court found that the 56 alleged consumer complaints to NHTSA failed to establish "that an unusually high number of complaints were made about the exploding sunroofs." Opp. at 4 (citing Dismissal Order at 7). Plaintiffs argue that this requirement is now satisfied because the SAC adds an allegation "that the number of complaints to NHTSA are a mere fraction of the complaints made to Volkswagen's corporate office." Opp. at 4. This allegation is not only conclusory; it is sheer supposition. It pleads no supporting **facts** and thus carries no weight to cure the fatal deficiency found by this Court. *See* MTD at 6; *see also Wilson v. Hewlett Packard Co.,* 668 F.3d 1136, 1147 (9th Cir. 2012) (allegations regarding knowledge derived from "sources of aggregate information" are "merely conclusory" and therefore fail to "suggest how [such] information could have alerted the [defendant] to the

1

defect"); *Gold v. Lumber Liquidators, Inc.*, 2015 WL 7888906 at *8 (N.D. Cal. Nov. 30, 2015) (finding failure to plead knowledge that would trigger a duty to disclose under the UCL and CLRA where plaintiffs referenced "thousands" of consumer complaints, but only specifically detailed four of them); *Grodzitsky v. Am. Honda Motor Co.,* 2013 WL 690822, *6 (C.D. Cal. Feb. 19, 2013).

Plaintiffs concede that to show knowledge based on "consumer complaints," they must "set[] forth the approximate timing of the complaints, how the complaints are lodged, how defendant responded, and how the information travelled from consumers to management." Opp. at 4. This is not remotely satisfied by the unsupported conclusory supposition that the NHTSA complaints "were a fraction of those made directly to VW's corporate office." Opp. at 4-5. The SAC does not add a single consumer complaint to the ones already found by this Court to be deficient.

Plaintiffs maintain that *Williams v. Yamaha Motor Co.,* 851 F.3d 1015, 1026-27 (9th Cir. 2017), stands for the broad proposition that "pre-sale knowledge of a defect can be based on consumer complaints." Opp. at 5. This misses the point, because both *Williams*, and this Court in its Dismissal Order, held that only "an *unusual* number of complaints" made to VWGoA would suffice to establish pre-sale knowledge. Apart from Plaintiffs' failure to allege facts establishing that VWGoA actually received such complaints, this Court ruled that the 56 alleged consumer complaints to NHTSA, "out of hundreds of thousands of vehicles," are not an "unusually high number" sufficient to put VWGoA on notice of the alleged problem. Dismissal Order at 7. The SAC pleads no facts establishing otherwise. *See also Berenblat v. Apple, Inc.*, 2010 WL 1460297, at *8-9 (N.D. Cal. Apr. 7, 2010) (more than 350 consumer complaints found not to be an "unusually high number" given the number of vehicles involved); *see also Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94, 97 (3d Cir. 2013) (approximately 2,200 consumer complaints sent to NHTSA or defendant found not to be an "unusually high number" for which pre-sale knowledge can be inferred).

Plaintiffs' attempt to distinguish *Sloan v. GM LLC*, 2017 WL 3283998 (N.D. Cal. Aug. 1, 2017), is without merit. Opp. at 6. While finding that 81 excessive oil consumption complaints

2

VOLKSWAGEN GROUP OF AMERICA, INC.'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT

CASE NO. 3:17-CV-05452-JST

1  did not establish that GM knew the issue was caused by the alleged Low-Tension Oil Rings
2  defect, the Court in *Sloan* also determined that even if they did, Plaintiff had failed to establish
3  "that the 81 complaints posted over the course of seven years was an unusually high number of
4  complaints" for which pre-sale knowledge can be inferred.  *Sloan,* 2017 WL 3283998, at *7
5  (N.D. Cal. Aug. 1, 2017), citing *Williams v. Yamaha Motor Co.,* 851 F.3d 1015, 1026 (9th Cir.
6  2017).

7        Finally, Plaintiffs reiterate their previous blanket argument that NHTSA complaints "have
8  been held to put defendant[s] on notice of the defect." Opp. at 6.  This Court already rejected the
9  argument because, as discussed above, Plaintiffs' allegations about the NHTSA complaints were
10 insufficient to establish pre-sale knowledge of the alleged defect.  Indeed, in each of the cases
11 cited by Plaintiffs, the pleading contained significant **other** allegations, grounded in specific
12 pleaded facts, that established pre-sale notice to the defendant.  No such additional **facts** giving
13 rise to pre-sale knowledge were pled in the FAC, as this Court found, and that deficiency has not
14 been cured in the SAC.  *See*, *e.g.*, *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 949-
15 50 (N.D. Cal. 2014) (at least eight Technical Service Bulletins, as well as multiple software
16 updates, regarding the alleged defect); *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1093
17 (N.D. Cal. 2014) (three internal Technical Service Bulletins regarding the alleged defect, as well
18 as a related interview with Ford's Hybrid Electric Vehicle Propulsion System engineering
19 manager); *Long v. Graco Children's Prods. Inc.*, 2013 WL 4655763, at *6-7 (N.D. Cal. Aug. 26,
20 2013) (the defendant had told NHTSA that it was "keenly aware" of the alleged defect with
21 respect to the same model car seats, with the same buckle design, as those alleged in the
22 complaint).

23       2.   <u>Internal Monitoring</u>

24       Disregarding the Dismissal Order, Plaintiffs rehash their prior argument that VWGoA's
25 "own testing, records of customer complaints, dealership repair orders, as well as various other
26 sources" establish the requisite pre-sale knowledge.  Opp. at 7.  This Court already rejected that
27 argument, ruling that pre-sale knowledge was not established by Plaintiffs' conclusory allegations
28 that "VW internally tracks information regarding all sunroof failures through the collection of

3

VOLKSWAGEN GROUP OF AMERICA, INC.'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT

CASE NO. 3:17-CV-05452-JST

incident reports and other information from drivers and dealers…including complaints, warranty claim[s]…and other aggregated data sources," and that "VW had knowledge very early on about the defect" due to its "pre-release testing of vehicle components." Dismissal Order at 7. The Court found these allegations fatally deficient because they contained no "facts so support a conclusion that VW's internal monitoring mechanisms caused VW to know 'of a widespread defect.'" *Id.* at 8. In addition, the Court found that Plaintiff did "'not provide any allegations regarding the method by which complaints were recorded and transmitted to management or otherwise reviewed or received." *Id.* The SAC fails to plead such essential facts.

Plaintiffs' opposition neither addresses the Court's rulings nor attempts to explain how the same types of conclusory allegations of "internal monitoring" in the SAC are entitled to a different result. *See also MacDonald v. Ford Motor Co.,* 37 F. Supp. 3d 1087, 1095-96 (N.D. Cal. Mar. 31, 2014) (Tigar, J.) (holding that allegations that defendant had access to "pre-production testing…early consumer complaints made exclusively to Ford, high levels of repair orders…testing conducted in response to complaints, replacement part sales data, and aggregate data from Ford dealers," without additional facts such as TSBs, are conclusory and insufficient to sustain a claim); *Stewart v. Electrolux Home Prods.,* 2018 WL 1784273, *9 (E.D. Cal. Apr. 13, 2018) (dismissing allegations of defendant's knowledge stating "[n]early every products manufacturer will have some quality control measures, and…will monitor issues with warranties and product return and failure rates"; thus, accepting general allegations about "internal testing or quality controls" is "to create a presumption of knowledge on the part of any large manufacturer of any alleged defect in its product line, and more than that, to assume that knowledge from some unknown time after the product has been on the market").

Plaintiffs argue, as they did unsuccessfully on the initial Motion to Dismiss, that *Resnick v. Hyundai Motor America, Inc.*, 2017 WL 1531192 (C.D. Cal. Apr. 13, 2017) "acknowledged that allegations that defendant actively monitored complaints are sufficient to establish knowledge of said complaints." Opp. at 8. This disregards the critical requirement in *Resnick*—recognized by this Court—of alleging not merely active monitoring, but also facts showing how such monitoring would have placed the defendant on notice of the specific defect alleged. In

4

1  finding Plaintiffs' conclusory "internal monitoring" allegations insufficient, this Court recited the
2  following quote from *Resnick*: "The fact that Defendants had quality control programs in place on
3  the one hand, and that several consumers made anonymous complaints online with a few
4  indicating that they spoke to a Hyundai dealership or to its customer service department on the
5  other hand, fails to establish knowledge of a *widespread defect.*"  Dismissal Order at 8, quoting
6  *Resnick*, 2017 WL 1531192, at *14 (C.D. Cal. Apr. 13, 2017) (emphasis added).  Since the SAC
7  fails to allege any facts showing that VWGoA's "internal monitoring mechanisms caused VW to
8  know 'of a widespread defect," as claimed by Plaintiffs, the conclusory allegations that VWGoA
9  monitored and received customer complaints cannot establish the requisite pre-sale knowledge.
10            Plaintiffs are hard-pressed to rely upon *Marsikian v. Mercedes Benz USA, LLC*, 2009 WL
11  8379784, *6 (N.D. Cal. May 4, 2009) (Opp. at 7).  Unlike the SAC here, the complaint in
12  *Marsikian* included specific factual allegations establishing that the defendant had previously
13  admitted, in internal communications with its dealerships, that it was aware of the alleged defect,
14  and that defendant provided good will adjustments to certain owners.  *See Id.* at *3-4.  No such
15  allegations are pled in the SAC.
16            Similarly, the pleaded facts found to have demonstrated knowledge in *Grodzitsky v. Am.*
17  *Honda Motor Co.*, are simply nonexistent here.  *See Grodzitsky v. Am. Honda Motor Co.*, 2013
18  WL 2631326, at *7 (C.D. Cal. June 10, 2013) (based upon factual allegations showing *inter alia*
19  "a 'sudden and significant increase' in Window Regulator failures beginning in or around 1994
20  (when the Window Regulators at issue in this suit were first installed), including one Honda
21  repair shop's records that show that 'since at least the late 1990s, Window Regulators have been
22  the single most frequently repaired replacement part on the Class Vehicles'").
23            Finally, in the Dismissal Order, this Court already rejected Plaintiffs' argument (Opp. at
24  7) that VWGoA "is obligated to gather data about exploding sunroofs pursuant to the TREAD
25  ACT."  *See* Dismissal Order at 7 (dismissing FAC's allegations premised on, *inter alia,* "incident
26  reports and other information from drivers and dealers [(through VW's TREAD ACT EWR
27  Reporting obligations)" as "insufficient to allege knowledge of a defect"); *see also Resnick v.*
28  *Hyundai Motor Am., Inc.,* 2017 WL 1531192, at *14 (C.D. Cal. Apr. 13, 2017) (holding that

5

VOLKSWAGEN GROUP OF AMERICA, INC.'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT

CASE NO. 3:17-CV-05452-JST

1  "[w]hile Plaintiffs now allege that Hyundai had significant quality-monitoring processes in
2  place…they have not sufficiently alleged how any of these quality control mechanisms placed
3  Defendants on notice of" the alleged defect).
4        Plaintiffs' reliance upon *Becerra v. General Motors LLC*, 241 F. Supp. 3d 1094, 1110
5  (S.D. Cal. Mar. 10, 2017), is misplaced for several reasons.  Opp. at 7.  First, it neither addresses
6  nor changes the fact that this Court already found Plaintiffs' conclusory TREAD-related
7  allegations to be insufficient.  The insufficient allegations have not been cured in the SAC.
8  Second, the court in *Becerra* merely held that GM's failure to comply with its TREAD Act
9  obligations was sufficient grounds for a CLRA claim.  However, nowhere did *Becerra* hold that
10 GM's reporting obligation was remotely sufficient to establish the requisite pre-sale knowledge of
11 the subject defect.  *Id.* at 1107.  In fact, the court there observed that "Plaintiffs allege that
12 Defendant's knowledge was based on customer complaints, customer efforts to seek repairs, and
13 Defendant's issuance of several Bulletins concerning the headlights."  The SAC is completely
14 lacking in this regard.

15                        3.   Prior Recalls

16       As Plaintiffs acknowledge, this Court stated that it was aware of no authority that "recalls,
17 standing alone, is sufficient to establish knowledge of a defect."  Opp. at 9.  Plaintiffs claim they
18 addressed this deficiency in two ways: (1) by including "allegations of knowledge…not limited to
19 recalls," and (2) by citing a case holding that "evidence of recalls alone" is sufficient.  *Id.*
20 Plaintiffs' arguments lack merit.
21       As discussed *supra,* Plaintiffs' additional allegations premised on consumer complaints
22 and the various speculative allegations comprising "internal monitoring" were already rejected as
23 insufficient to plead knowledge of the alleged defect.  Despite adding some similarly insufficient
24 conclusory allegations, the SAC fails to cure the deficiencies of the FAC that were the subject of
25 the Dismissal Order.
26       Significantly, Plaintiffs do not address any of VWGoA's arguments demonstrating the
27 insufficiencies of the conclusory allegations concerning VW's alleged participation in
28

6

VOLKSWAGEN GROUP OF AMERICA, INC.'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT

CASE NO. 3:17-CV-05452-JST

1  conferences of international rulemaking bodies, recalls by other manufacturers, a NHTSA
2  investigation into Hyundai vehicles, and the "KATRI" investigation.  *See* MTD at 7-8; *see also*
3  *Elfaridi v. Mercedes-Benz, USA, LLC,* 2018 WL 4071155, *5 (E.D. Mo. Aug. 27, 2018)
4  (dismissing consumer fraud claim, alleging sunroof defect, for lack of knowledge holding that
5  "an investigation into another automaker's vehicle is insufficient to establish" knowledge, nor
6  "do voluntary recalls of vehicles by" other manufacturers "establish defendants' knowledge of a
7  defect in a Mercedes-Benz vehicle").

8  Unable to refute those arguments, the opposition (pp. 8-9) merely restates the allegations
9  made in the SAC and contends, without explanation, that they establish VWGoA's purported pre-
10 sale knowledge of the widespread design defect alleged.  This is *prima facie* insufficient to avoid
11 dismissal.

12 Plaintiffs are hard-pressed to rely upon *Precht v. Kia Motors Am., Inc.,* 2014 WL
13 10988343 (C.D. Cal. Dec. 29, 2014) to argue that the inapplicable "other" recalls alleged in the
14 SAC, standing alone, establish that VWGoA had pre-sale knowledge of the defect alleged to exist
15 in Plaintiffs' and the putative class vehicles.  Opp. at 9.  In *Precht*, plaintiffs alleged a brake
16 switch defect, and their pleading contained detailed factual allegations showing that (1) the
17 defendant Kia's sister company, Hyundai, initially issued in 2009 a similar brake switch recall for
18 over 500,000 2005-2008 vehicles encompassing eight different models, (2) thereafter, both Kia
19 and Hyundai issued a similar brake switch recall for 1.6 million vehicles, including 620,000 Kia
20 vehicles, covering multiple model and model year vehicles, and (3) the Kia recalls "include[d]
21 some but not all 2011 Kia Sportage, 2010 Kia Optima, and 2011 Kia Sedona vehicles" -- the
22 same model and model year vehicles as those alleged in plaintiff's putative class.  2014 WL
23 10988343, at *1.  Furthermore, the pleaded factual allegations in *Precht* established that both the
24 Hyundai and Kia recalls "used similar language" and were written by the same individual from
25 the Hyundai Kia America Technical Center, Inc.  Most importantly, Plaintiffs had alleged facts
26 showing that the putative class vehicles "experienced the *exact defect* described in the various
27 recall notices."  *Precht v. Kia Motors Am. Inc.,* 8:14-cv-00148, FAC, Dkt. No. 28, at 10
28 (emphasis added).

Based on these detailed allegations about the extensive similar recalls, the exact same defect and recall language alleged, and the relationship between Hyundai and Kia, the court in *Precht* held that plaintiff alleged sufficient facts "to support a plausible inference that Kia knew in 2009 that, if it used and continued to use the same design and manufacturing process for the Class Vehicles as Hyundai did for its vehicles, then the Class Vehicles were likely to contain the same defect when sold." *Id.* at *7. The court further emphasized that "the fact that Kia later recalled many of its own vehicles for the same defect, including vehicles from model years both before and after Hyundai's 2009 recall, further support[s] the inference that Hyundai and Kia shared similar design and manufacturing processes with respect to the brake switch." *Id.*

The sparse, conclusory allegations of "other" recalls in the SAC do not remotely rise to the level, nature and extent of the recall-related factual allegations involved in *Precht*. The recalls in *Precht* were vast in scope, involving more than 2 million vehicles alleged to contain the same defect. In sharp contrast, the recalls alleged in the SAC were confined to a limited number of model and model year vehicles—to wit, certain 2013-2014 Audi A8 and S8 vehicles (1,120 vehicles "potentially" affected"), certain 2012 Audi Q5 vehicles (13,172 vehicles), and certain 2013-2015 Volkswagen Beetle (7,062 vehicles). SAC ¶ 34, 38; Exh. A-C to Request for Judicial Notice.[1] The recalls in *Precht* included the same model and model year Kia vehicles as those alleged in the putative class, whereas the recalls alleged in the SAC do not.

The far more extensive recalls in *Precht* were also factually alleged to have contained similar language, to have been written by the same person, and to have involved the exact same widespread design defect as that which was alleged by plaintiffs. No such facts are alleged in the SAC. In fact, the "other" recalls referenced in the SAC related to specific discrete

---

[1] These exhibits are part of NHTSA's publicly available file relating to the Volkswagen and Audi recalls discussed in Plaintiffs' opposition. *See* SAC ¶¶ 34, 38. VWGoA is respectfully submitting these exhibits here in response to Plaintiffs' argument that pursuant to *Precht v. Kia Motors Am., Inc.,* 2014 WL 10988343 (C.D. Cal. Dec. 29, 2014) "evidence of [prior] recalls alone is sufficient to establish knowledge." Opp. at 9. These exhibits show the vast differences, in level, substance, and scope, between the recalls involved in *Precht* and the substantially different and more limited Volkswagen/Audi recalls argued by Plaintiffs to constitute pre-sale notice.

8

VOLKSWAGEN GROUP OF AMERICA, INC.'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT

CASE NO. 3:17-CV-05452-JST

manufacturing/production issues—not the widespread design defect alleged by Plaintiffs. *See* SAC ¶ 26. As shown in the submissions to NHTSA, the recalls involving certain other model and model year VW and Audi vehicles, none of which are in Plaintiffs' putative class, were due to discrete manufacturing issues unique to those vehicles – namely, "a ***production process issue at the sunroof glass supplier***" resulting in those vehicles being manufactured out of tolerance." *See* Exhibits A, B and C to Request for Judicial Notice (emphasis added).

In short, nothing in Plaintiffs' opposition saves the deficient allegations in the SAC, which do not establish that VWGoA had pre-sale knowledge of the widespread sunroof defect alleged by Plaintiffs. Accordingly, Plaintiffs' CLRA, UCL and fraud claims should be dismissed.

### III. CONCLUSION

For the foregoing reasons, VWGoA respectfully requests that Counts II, III, and V of the SAC be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), together with costs and disbursements, and such other relief as the Court deems just and proper. Moreover, since this is Plaintiffs' third attempt at pleading, and Plaintiffs have failed to cure the fatal deficiencies enumerated in this Court's Dismissal Order, these claims should be dismissed with prejudice.

Respectfully Submitted,

DATED:   September 13, 2018          HERZFELD & RUBIN P.C.

By:   /s/ *Michael B. Gallub (Pro Hac Vice)*
      Michael B. Gallub (Pro Hac Vice)
      Attorneys for Defendant
      VOLKSWAGEN GROUP OF
      AMERICA, INC.

9

VOLKSWAGEN GROUP OF AMERICA, INC.'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 3:17-CV-05452-JST