United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSAURA DERAS, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC.,<br><br>　　　　Defendant. | Case No. 17-cv-05452-JST<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS CERTAIN CLAIMS IN PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Re: ECF No. 56 |

Before the Court is Defendant's motion to dismiss certain claims in the second amended complaint. ECF No. 56. The Court will deny the motion.

## I. BACKGROUND

This putative class action asserts various claims against Defendant Volkswagen Group of America, Inc. ("VW") based on allegations that VW fails to warn consumers about the dangers of "sunroofs which spontaneously shatter." ECF No. 51 ¶ 4. The Court denied VW's motion to dismiss the implied warranty claims from the first amended complaint ("FAC") but dismissed the unjust enrichment claim with prejudice. ECF No. 47 at 4-6, 11. The Court dismissed, with leave to amend, the unfair competition law ("UCL"), California Consumer Legal Remedies Act ("CLRA"), and fraud by omission claims after concluding that the FAC did not adequately "allege that VW had knowledge of the alleged defect at the time of sale or lease." *Id.* at 6-11.

Plaintiff Rosaura Deras filed a timely second amended complaint ("SAC"), which adds Alexander Santiago and Maria Elena Santiago as potential named plaintiffs. ECF No. 51 at 2. The SAC also adds allegations, discussed in more detail below, relevant to VW's knowledge of the alleged defect. VW contends that Plaintiffs' allegations of knowledge remain deficient and moves to dismiss Plaintiffs' UCL, CLRA, and fraud by omission claims with prejudice.

## II. LEGAL STANDARD

A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks and citation omitted). In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

Fraud claims are governed by the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that "a party must state with particularity the circumstances constituting fraud or mistake" but allows that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Allegations of fraud must "be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong. Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks, alteration, and citations omitted). However, "a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim," and such a claim "will not be dismissed purely for failure to precisely state the time and place of the fraudulent conduct." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007).

## III. DISCUSSION

When the Court dismissed the UCL, CLRA, and fraud by omission claims from the FAC, it did so because: (1) the number of National Highway Traffic Safety Administration ("NHTSA") complaints alleged by plaintiffs was not "an unusually high number of complaints" and "therefore do[es] not show VW's knowledge of the alleged defect"; (2) Deras failed to allege "facts to support a conclusion that VW's internal monitoring mechanisms caused VW to know 'of a widespread defect'"; and (3) allegations regarding prior recalls based on similarly designed sunroofs was "some evidence that VW knew of a design defect in the sunroofs of the Class Vehicles," but that this was not, "standing alone, sufficient to establish knowledge of a defect." ECF No. 47 at 6-10 (quoting *Resnick v. Hyundai Motor Am., Inc.*, No. CV 16-00593-BRO (PJWx), 2017 WL 1531192, at *14 (C.D. Cal. Apr. 13, 2017)).

Plaintiffs attempt to cure these deficiencies in the SAC in several ways. As to the NHTSA complaints, the SAC adds that:

> Plaintiffs refer to 57 NHTSA complaints above, and this number represents in fact an unusually high number of complaints sufficient to alert VW of the defect. The NHTSA database tends to contain far fewer complaints than VW's internal databases, since most drivers first react by communicating with their dealership or VW corporate, rather that [sic] the government, and many drivers do not even know NHTSA exists or accepts driver complaints. Thus, the 57 NHTSA complaints represent only a small fraction of the total number of complaints, and there were an unusually high number of complaints before Plaintiffs leased and purchased their vehicles, sufficient to impart knowledge/notice of the defect to VW.

ECF No. 51 ¶ 30.[1] The SAC also expands on the NHTSA investigations and prior recalls alleged in the FAC. For instance, the FAC included allegations concerning Hyundai and Audi recalls related to "shattering sunroofs"; mentioned NHTSA investigations in connection with both the Hyundai and Audi recalls; and alleged that VW issued a voluntary recall of 2013-2015 VW Beetles with panoramic sunroofs. ECF No. 22 ¶¶ 9, 33, 39-40. The SAC alleges additional facts

---

[1] As the Court noted in its order on VW's motion to dismiss the FAC, the FAC's table of NHTSA complaints listed only fifty-six, not fifty-seven, complaints. ECF No. 47 at 2 n.2. The same is true of the SAC. ECF No. 51 ¶ 27. In addition, only "forty-five [of the identified complaints] were made before Deras purchased her vehicle on June 3, 2016." ECF No. 47 at 7. However, all fifty-six were made before the Santiagos purchased their vehicle in August 2017. ECF No. 51 ¶¶ 27, 65.

3

related to the Hyundai recall and NHTSA investigations:

> 32. On October 2, 2012, NHTSA launched an investigation into the 2012 Hyundai Veloster after receiving numerous reports and complaints of spontaneously shattering panoramic sunroofs. Numerous injuries from falling glass were noted by NHTSA in the investigation and that such incidents pose a risk of personal injury or vehicle crash. On December 6, 2012, Hyundai notified NHTSA that it would conduct a safety recall. Hyundai chose to limit its recall to only a small subset of its vehicles with panoramic sunroofs, covering only 2012 Veloster vehicles produced from July 4, 2011 through October 31, 2011, in an attempt to save money.
>
> 33. NHTSA has reviewed similar complaints by owners of other vehicles, and has sent ([sic] in approximately late 2012 to early 2013 information requests relating to exploding sunroofs to Ford, Volkswagen, Hyundai and Nissan. This investigation by NHTSA also establishes VW's knowledge of the defect.

ECF No. 51 ¶¶ 32-33. The SAC also alleges two different Audi recalls and adds that VW was responsible for those recalls: "In October of 2013, VW recalled Audi 2013 and 2014 A8 premium luxury sedans and the sportier S8 Version, with standard sunroofs, due to shattering sunroofs. VW also recalled at the same time 2012 Q5 vehicles, due to sunroofs that may shatter." *Id.* ¶ 34.

Similarly, the SAC expands on the FAC's allegation that the "Korea Automotive and Testing Research Institute (KATRI) likewise concluded that the sudden shattering of a panoramic sunroof while driving may cause 'abrasions due to shattered glass' and also cause the 'risk of secondary accidents.'" ECF No. 22 ¶ 41. Specifically, the SAC adds:

> In December 2012, KATRI, which is the South Korean government's automotive safety and testing arm, launched an investigation into shattering sunroofs of numerous automotive manufacturers. Throughout KATRI's investigation, VW and other manufacturers were kept apprised and KATRI ultimately concluded that the panoramic sunroofs were prone to spontaneous shattering. Over ensuing years, VW was notified and kept apprised of KATRI's investigation through direct contact as well as through various trade organizations of which VW was a member. At a hearing in November 2013 before Korea's Ministry of Land, Infrastructure, and Transport ("MOLIT"), KATRI presented its findings and allowed automakers to respond. Representatives from VW as well as other manufacturers were present at this meeting. According to KATRI, its investigation confirmed that the panoramic sunroofs are prone to shattering.

ECF No. 51 ¶ 47.

Finally, the SAC alleges that:

> VW participates in discussions, meetings, conferences of international rule-making bodies, and international trade organizations where the defects associated with the Class Vehicles and their sunroofs were and are the topic of discussion and reform. Many of these discussions, meetings, [and] conferences, took place before Plaintiffs leased and purchased their vehicles.

*Id.* ¶ 30.

The Court does not find persuasive the SAC's conclusory allegation that "57 NHTSA complaints . . . represents in fact an unusually high number of complaints sufficient to alert VW of the defect." *Id.* Even if the Court assumes as true the SAC's next allegation that consumers are more likely to complain to "their dealership or VW corporate" than to the NHTSA, and that VW therefore had received more complaints than the NHTSA, it would be speculative to conclude that VW must therefore have received "an unusually high number of complaints" relative to the "potentially hundreds of thousands or more" Class Vehicles. *Id.* ¶¶ 30, 38. Standing alone, the allegations of consumer complaints are therefore insufficient to allege knowledge. *Sloan v. Gen. Motors LLC*, No. 16-cv-07244-EMC, 2017 WL 3283998, at *7 (N.D. Cal. Aug. 1, 2017) ("[T]he Ninth Circuit has held that consumer complaints suffice to establish knowledge only where there were an *unusual* number of complaints, such that the manufacturer would be on notice of a specific problem." (emphasis in original) (citing *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1026 (9th Cir. 2017); *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1148 (9th Cir. 2012))).

Nonetheless, the Court concludes that the allegations in the SAC, when taken as a whole and viewed in a light most favorable to Plaintiffs, are sufficient. Because "Rule 9(b) does not apply to allegations of knowledge and intent, . . . Plaintiff only needs to allege facts raising 'a plausible inference that Defendant knew of the [ ] Defect at the time of the sale.'" *Precht v. Kia Motors Am., Inc.*, No. SA CV 14-1148-DOC (MANx), 2014 WL 10988343, at *6 (C.D. Cal. Dec. 29, 2014) (alteration in original) (citations omitted). The Court has already concluded that, if true, allegations that VW and other manufacturers "have instituted prior recalls based on similarly designed sunroofs . . . would be some evidence that VW knew of a design defect in the sunroofs of the Class Vehicles." ECF no. 47 at 9 (footnote omitted). In finding the FAC's allegations insufficient, the Court observed that "Deras has cited no authority, and this Court is aware of none,

holding that prior recalls of similarly designed products is, standing alone, sufficient to establish knowledge of a defect." *Id.* at 10. But Plaintiffs have now alleged more than prior recalls. For example, the SAC alleges that "VW participates in discussions, meetings, conferences of international rule-making bodies, and international trade organizations where the defects associated with the Class Vehicles and their sunroofs were and are the topic of discussion and reform." ECF No. 51 ¶ 30. The SAC further alleges that KATRI "launched an investigation into shattering sunroofs of numerous automotive manufacturers," and "VW and other manufacturers were kept apprised and KATRI ultimately concluded that the panoramic sunroofs were prone to spontaneous shattering." *Id.* ¶ 47. While VW correctly notes that Plaintiffs do not allege that KATRI was investigating vehicles manufactured by VW, Plaintiffs elsewhere allege that "VW is also aware that other manufacturers" have vehicles with "similarly designed panoramic sunroofs, similarly designed sunroofs, and similar shattering problems." *Id.* ¶ 31. In addition, Plaintiffs allege that the NHTSA sent "information requests relating to exploding sunroofs" to VW in 2012 and 2013, prior to Plaintiffs' vehicle purchases in 2016 and 2017.[2] *Id.* ¶¶ 33, 59, 65. Viewed in a light most favorable to Plaintiffs, the SAC's allegations are sufficient to raise a plausible inference of knowledge.

In conjunction with its reply brief, VW requests judicial notice of three documents related to its prior recalls of VW and Audi vehicles not at issue in this case. ECF No. 59. Plaintiffs have not had an opportunity to respond to these documents.[3] But even if the Court were to consider them, they would not require a different result. As to VW's recall of 2013-15 Beetles, the Court previously explained that "VW characterizes [the cause of the recall] as a one-time manufacturing defect, but construing the allegations in a light most favorable to Deras, it is reasonable to infer

---

[2] *Elfardi v. Mercedes-Benz, USA, LLC*, a case relied on by VW, is distinguishable. No. 4:16 CV 1896 CDP, 2018 WL 4071155 (E.D. Mo. Aug. 27, 2018). In that case, the plaintiffs did not allege that other vehicles with known sunroof issues "had the precise defect at issue here or that they shared the same design as the Mercedes-Benz vehicles at issue shared the same design." *Id.* at *5. And the NHTSA was not alleged to have requested information from Mercedes-Benz until after the plaintiffs purchased their vehicles. *Id.* at *6.

[3] The Court need not consider facts or arguments presented for the first time on reply. *Shilling v. PolyOne Corp.*, No. 14-CV-03562-BLF, 2016 WL 7325013, at *4 (N.D. Cal. Dec. 16, 2016) (citing *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007)).

6

that sunroofs with similar designs might experience the same defect." ECF No. 47 at 9 n.6. The same reasoning applies to VW's characterization of the Audi recalls as "[d]ue to a production process issue at the sunroof glass supplier." ECF No. 59-2 at 3; ECF No. 59-3 at 2.

## CONCLUSION

VW's motion to dismiss certain claims in Plaintiffs' second amended complaint is denied.

**IT IS SO ORDERED.**

Dated: February 26, 2019

JON S. TIGAR
United States District Judge